UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| THOMAS CHARLES FORSYTHE, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:18-cv-00122 |
| | ) | REEVES/POPLIN |
| NATIONAL HEALTH CORPORATION, | ) | |
| | ) | |
|     Defendant. | ) | |

## MEMORANDUM AND ORDER

Thomas Charles Forsythe brings this action against his former employer alleging retaliatory discharge under the False Claims Act, the Tennessee Public Protection Act, and Tennessee common law. National Health Corporation moves to dismiss Forsythe's Amended Complaint for failure to state a claim. Because the allegations of the Amended Complaint relate back to the original Complaint, National Health's motion is denied.

### I. Background

On March 5, 2012, Forsythe filed a *qui tam* action alleging that National Healthcare Corporation (NHC) committed numerous violations of the False Claims Act (FCA) by overcharging Medicare for the provision of skilled nursing services. Forsythe's Complaint also alleged that NHC terminated him in violation of the FCA's anti-retaliation provision and it asserted similar retaliatory discharge claims against NHC under Tennessee state law. The case remained under seal for over five years until the United States declined to

1

intervene. The court then unsealed the *qui* tam action and granted Forsythe leave to file an amended complaint to pursue his retaliatory discharge claims. The Amended Complaint named National Health Corporation, rather than NHC, as the operator of the nursing facility that employed him.

Forsythe was employed as a physical therapist by National Health in 1997. In July 2010, two managers, Edwin Lopez and Suzanne Lawrence, hosted a compliance training program explaining changes in Medicare regulations that affected how physical therapists were to code patients. Specifically, they said if the therapists saw patients in a group, they would need to use a group code, rather than the one-on-one codes they had used previously. This new form of coding directly impacted the reimbursement rate for the claims that National Health submitted to Medicare, resulting in less revenue due to the lower reimbursement rate for the group therapy code. Failure to comply with the new regulations, Forsythe and the others were told, was "committing Medicare fraud." Despite this warning Forsythe claims that his supervisor, David Grantham, told them repeatedly to continue to code the old way unless management was observing. Grantham was upset about the new way of coding because it caused productivity and revenue to go down.

Forsythe refused to go along with Grantham's instructions to continue using the old coding procedures, telling Grantham that he could not afford to lose his license. Forsythe alleges that he and another employee were called into Grantham's office and admonished for refusing to code the old way. In November 2010, shortly after the new coding procedures went into effect, Lopez and Lawrence visited National Health and told Forsythe and other therapists that their location was not in compliance with the new Medicare coding

regulations.  On November 28, Forsythe called National Health's anonymous hotline, made a complaint, and was told two weeks later an investigation was underway but not complete. On January 7, 2011, Grantham once again chastised Forsythe for refusing to follow orders and warned him "S--- rolls down hill and I'm putting it on you."  Forsythe immediately alerted Lawrence and Lopez, which led to a meeting with Doug Ford, facility administrator, who tried to convince Forsythe that Grantham had not told him to do anything improper.

Grantham resigned on January 28, 2011.  Lopez told Forsythe on February 4, 2011, that NHC would self-report to Medicare about the compliance issue and make a refund to Medicare.

Thereafter, Forsythe claims he began to be treated differently at work.  He says he was referred to as a 'snitch' by his co-workers, his work schedule was abruptly changed, he was denied requests for time off, and he was given the cold shoulder.  Forsythe also claims to have been written up as a pretext for firing him.  Forsythe was fired on March 7, 2011, for allegedly "creating a hostile environment."

## II.  Standard of Review

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept the material facts in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and decide whether it is plausible that plaintiff's claim for relief is valid.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citing *Bell Atlantic v. Twombly,* 550 U.S. 544, 556 (2007)).  In determining whether a complaint states a claim, a court must accept as true all the factual allegations in the complaint and determine whether the complaint contains enough facts to "state a claim to relief that is plausible on

its face." *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 358 (6th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570). Additionally, Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Bridge,* 681 F.3d at 358.

When evaluating a motion to dismiss, the court's primary focus is on the complaint. The court may, however, without converting the motion into one for summary judgment, consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint," as well as any other matters that are otherwise appropriate for the taking of judicial notice. *Amini v. Oberline College*, 259 F.3d 493, 502 (6th Cir. 2001); *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir.2003); *Doe v. SexSearch.com*, 551 F.3d 412, 416 (6th Cir. 2008).

National Health alleges Forsythe's claims are barred by the applicable statutes of limitations because the claims do not relate back to the original Complaint. National Health also alleges that Forsythe has not pled facts to support his retaliation claims.

### III. Analysis

**A.     Relation Back under Rule 15(c)(1)(C)**

A retaliation claim under the False Claims Act (FCA) has a three-year statute of limitations that begins to run at "the date when the retaliation occurred." 31 U.S.C. § 3730(h)(3). Facially, it would appear that Forsythe's claim is time-barred, as he was terminated in March 2011. Forsythe asserts his claims in the Amended Complaint should "relate back" to his original Complaint filed on March 5, 2012. The court agrees.

An amendment to a pleading relates back to the original pleading when

> the amendment changes the party or the naming of the party against whom a claim is asserted . . . and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed.R.Civ.P. 15(c)(1)(C). The timing of service under Rule 15(c) is governed by Rule 4(m) which states that an added defendant must be served within ninety days of filing the complaint unless the plaintiff shows good cause. Fed.R.Civ.P. 4(m); *see also Jackson v. Herrington,* 393 Fed. Appx. 348, 353-54 (6th Cir. 2010) (noting that Rule 4(m)'s "good cause" exception is extended into Rule 15(c)). The court finds that Forsythe has shown good cause. Under the FCA, a complaint is filed under seal, and cannot be served on the defendant without a court order. 31 U.S.C. § 3730(b)(2). If a complaint remained under seal until the ninety-day window for service had passed, relation back could be rendered impossible through no fault of the plaintiff. The Supreme Court has indicated that district courts have discretion to allow a suit to continue even if no good cause is shown. *See Henderson v. United States*, 517 U.S. 654, 662 (1966).

National Health argues it was not on constructive notice when the original lawsuit was filed against NHC. National Health is correct in stating that sharing a business address, registered agent, and counsel are not wholly dispositive to establishing such notice. The Sixth Circuit takes the position, however, that notice can be established when there is a "sufficient identity of interest" between the original plaintiff and the new plaintiff. *Asher v. Unarco Material Handling, Inc.,* 596F.3d 313, 319 (6th Cir. 2010). It can hardly be

concluded that National Health remained completely in the dark about the prior FCA action until being served in the instant case. The magnitude of the relationship between National Health and NHC is difficult to deny. Defendant does not dispute that National Health and NHC are affiliated entities. National Health is an administrative services affiliate and contractor with respect to NHC. NHC is wholly owned by National Health Corporation Employee Stock Ownership Plan. All NHC personnel are employed by National Health, which is also responsible for all of NHC's "overall services in the area of personnel, loss control, insurance, education and training." National Healthcare Corporation Form 10-K at 7, 61 (dated Feb. 17, 2012), *available at* https://nhccare.com/pdfarchive'2012/05/20120220_form10k.pdf [R. 6, p. 7]. National Health also provides one hundred percent of its services to NHC. *Id.*

National Health claims that its access to a copy of the original complaint (albeit a fairly redacted one) is not enough to make it aware that this particular retaliation claim had been filed. To say that an organization so closely intertwined with another would not be aware of ongoing litigation arising from a FCA claim is, at best, a stretch.

National Health also asserts it would be unduly prejudiced if it was made to litigate these claims, and it neither knew nor should have known that but for Forsythe's mistake, the original action would have been brought against it. This argument is without merit for many of the same reasons that its argument of no constructive notice fails. In short, Forsythe's amendment merely corrects the name of a party that already had notice of the action – he is not bringing in a new party that had no prior notice.

Moreover, National Health's arguments that the burden lies entirely on Forsythe are incorrect. The question under Rule 15(c)(1)(C) is not whether the plaintiff knew or should have known the identity of the defendant, but whether the defendant knew or should have known that it would have been named as a defendant but for an error. *Krupski v. Costa Crocier S. p. A.*, 560 U.S. 538, 548 (2010).

Forsythe has clearly shown how closely related NHC and National Health are. The names of the two companies alone are so close that it is entirely reasonable to believe there was a mistake on Forsythe's part in the initial filing. *See* 6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1498 (3rd ed. 1990) (Rule 15(c) has been "amplified to state more clearly when an amendment of a pleading changing the party against whom a claim is asserted (including an amendment to correct a misnomer or misdescription of a defendant) shall relate back to the date of the original pleading"); *Powell v. Bolton Square Hotel Co., Inc.,* 2010 WL 1855756 at *3 (N.D.Ohio May 10, 2010) ("The misidentification of similarly named or related companies is the classic case for application of Rule 15(c) relation back"). These facts, along with the self-reported refund NHC gave to Medicare are sufficient to surmise that National Health should have known it would be implicated in this action.

National Health's claim of prejudice due to the length of time between suits is also immaterial, as the requirement of filing *qui tam* actions under seal is the sole reason for the delay. Forsythe filed his Amended Complaint fourteen days after the case was unsealed. His claims arise out of the same actions as the original complaint (they were even part of the original complaint), and they relate back and will be considered timely filed.

7

### B. Forsythe Sufficiently States a Claim for Relief

In order to survive a motion to dismiss, the plaintiff must "state a claim to relief that is plausible on its face." *Twombly,* 550 US at 570. The pleading standard "does not require detailed factual allegations, but it demands more than an unadorned, the defendant unlawfully harmed me accusation." *Iqbal,* 556 U.S. at 678. A formulaic recitation of the elements of a cause of action will not do. The allegations must be of a sufficient nature as to nudge the claims "across the line from conceivable to plausible." *Twombly,* 550 U.S. at 555. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 US at 678. The court must construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff. *DirecTV, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007). It is important to note, however, that a court does not need to accept every word in the complaint as true. The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal,* 556 US at 678. This evaluation is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 US at 679. Each element of the claim must be sufficiently pleaded to survive a motion to dismiss. *Ctr for Bio-Ethical Reform, Inc. v. Napolitano,* 614 F.3d 365, 372-74 (6th Cir. 2011).

For a retaliation claim, the plaintiff must show (1) he engaged in a protected activity, (2) his employer knew that he engaged in the protected activity, and (3) his employer discharged or otherwise discriminated against the employee as a result of the protected activity. *Yuhasz v. Brush Wellman, Inc.,* 341 F.3d 559, 566 (6th Cir. 2003).

### 1. Protected Activity

For Forsythe's actions to be considered protected, he must show that they were undertaken "to stop one or more violations of the FCA." *Verble v. Morgan Stanley Smith Barney, LLC,* 148 F.Supp.3d 644, 657 (E.D.Tenn. 2015); *see also* 31 U.S.C. § 3730(h). An employee does not need to establish that his employer actually violated the FCA. *Jones-McNamara v. Holzer Health Sys.,* 630 Fed. Appx. 394, 400 (6th Cir. 2015). However, a plaintiff needs to establish "some nexus to the FCA." *McKenzie v. BellSouth Telecomm, Inc.,* 219 F.3d 508, 517 (6th Cir. 2000). Making a report that alleges "fraud on the government" very well may constitute protected activity. *Id.* at 516; *see also Miller v. Abbott Labs,* 648 Fed. Appx. 555, 560 (6th Cir. 2016) (Section 3730(h) protects efforts to stop fraud on the government). National Health incorrectly concludes that Forsythe has not sufficiently pleaded this. Forsythe states clearly that his boss encouraged him to continue to input codes under the previous system. Further, he has alleged that the purpose of these code inputs was to increase the amount of money National Health would receive, greater than what it should have received, from Medicare.

As Forsythe points out, "upcoding" is a common form of Medicare fraud. Additionally, Forsythe alleges multiple times that he was informed by superiors that failing to follow the new regulations was "committing Medicare fraud." Forsythe alleges

9

Grantham admitted that the motivation for this continued upcoding was to increase the amount of reimbursements from Medicare that National Health was receiving. Grantham's instructions to comply with the correct coding if "someone from management was present watching," further lends credibility to the idea that Forsythe had a reasonable belief that Medicare fraud was being committed. Contrary to National Health's assertions, the link between coding and billing practices is clear. Under the FCA, it is illegal to "knowingly make . . . a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a). The specific actions that Forsythe has alleged are indicative of a specific violation under the FCA.

National Health also claims that each violation that Forsythe alleges is speculative, and that Forsythe has not sufficiently pleaded either that any employee actually committed a violation or that any fraudulent codes were submitted to the government. These assertions, however, overstate what is required of Forsythe to satisfy the Rule 12(b)(6) requirement. Courts do not require "heightened fact pleading of specifics." *Twombly,* 550 US at 570. Proving a concrete violation has never been part of the requirement to state a claim. *See Graham Cty. Soil & Water Conservation Dist. V. United States ex rel. Wilson,* 545 U.S. 409, 416 n. 1 (2005). National Health's reply again stresses that, even if Forsythe made sufficient allegations in the original Complaint, he failed to do so in his Amended Complaint. This court may consider the original Complaint to be just as relevant to the Rule 12(b)(6) motion discussion as the Amended Complaint, and National Health's argument is without merit. *See Rondigo LLC v. Twp. Of Richmond,* 641 F.3d 673, 680-81 (6th Cir. 2011) (A court may consider exhibits attached to the pleadings, public records,

items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein). The court finds that Forsythe has sufficiently pleaded facts across his two complaints that at least give rise to a plausible inference of protected activity.

### 2. Notice of Protected Activity

National Health claims that it was not given sufficient notice of any protected activity. It again overstates the burden placed on Forsythe to survive a motion to dismiss. Where one "alleges that he observed purportedly fraudulent activity, he confronted his employer about it, and his employer fired him because of it," the allegations are sufficient to survive a motion to dismiss. *United States ex rel. Marlar v. BWXT Y-12, LLC*, 525 F.3d 439, 449-50. National Health argues that Forsythe's accusations amount to nothing more than "grumbling to the employer about regulatory violations." The court disagrees.

Forsythe alleges that he complained to Grantham and other superiors multiple times about his unwillingness to commit what he reasonably believed was Medicare fraud. He even called the company's hotline and was informed a few days later that an investigation was underway. Moreover, NHC ended up self-reporting the incident and making a payment back to Medicare. National Health and NHC are intimately connected with one another as previously discussed. Forsythe has clearly made allegations that nudge his claims across the line from conceivable to plausible, and that National Health had notice of the claims being filed against it.

### 3. Causal Connection between Complaints and Firing

Forsythe must also allege that his firing was causally related to his protected activity, "at least in part." *McKenzie,* 219 F.3d at 518. National Health tries to portray this as a heavier burden than it actually is. Forsythe need not explicitly draw any connection between these allegations and his later termination, nor must he actually show that the retaliation was motivated by his report. Instead, Forsythe merely needs to allege facts that are sufficient to allow the court to "draw on its judicial experience and common sense" and "draw a reasonable inference" that there is a causal connection. *Iqbal,* 556 U.S. at 678-79. Proving elements is a matter for trial. The court finds Forsythe has alleged facts sufficient to create the inference of a causal connection. He claims that one of Grantham's rationales for continuing to upcode was that Grantham's administrator had been breathing down his neck about numbers and productivity and revenue. The allegations go on to indicate that Grantham directly threatened Forsythe for failing to participate in the upcoding scheme ("S--- rolls down hill and I'm putting it on you.") Forsythe then alleges that after the report went all the way up to the Regional Vice President, he began to be treated coldly at work and was even written up for failing to perform physical therapy on a patient who had refused therapy before being fired for "creating a hostile environment." National Health argues that these claims are merely "inviting the court to speculate," but there is a difference between outright speculation and drawing reasonable inferences. It is plausible to believe that Forsythe was fired for reporting the upcoding issue, and the court finds he has sufficiently pleaded enough facts from which such inferences can be drawn.

## IV. Conclusion

In light of the foregoing discussion, the court finds that Forsythe's claims relate back to his original Complaint. National Health had notice of the original action and knew or should have known that it could be a named party. Additionally, Forsythe has adequately alleged facts that create a plausible inference of wrongdoing. Therefore, National Health's motion to dismiss [R. 5] is **DENIED.**

**ENTER:**

_____
**UNITED STATES DISTRICT JUDGE**